on behalf of the people, Mr. Richard S. Lange. Good morning, guys. Good morning. May it please the court. Nathaniel Wise challenges a 47-year sentence imposed upon him following his conviction for the offense of first-degree murder. Mr. Wise and fathers made their way into a home of a North Chicago drug dealer and his family. And what was intended as a robbery ended with the fatal shooting of the dealer. In statements to the police, my client admitted serving as a lookout for others at the scene. Two of the other robbers, Ernest Hughes and Mike Reed, flipped and testified for the prosecution in exchange for good deals on lesser charges. And they said that they, only they placed, they're the only witnesses to place my client inside the house with a gun. But neither of the men, whose credibility is suspect as it is, and the prosecutors tell the jury, I don't know if you believe these guys, the things they say, but let's, for the purpose of argument, believe them here. Neither of them testified that my client fired, ever fired any shots. No one ever made that claim. In fact, the conclusion that my sentencing hearing, telling the judge that the minimum sentence had to be 35 years. You do the math, that tells us that 20 years is the minimum for a first-degree murder, plus 15 years of firearm add-on for having possession of a firearm at the time of the murder. Had the state truly believed that my client was a shooter, it surely would have sought a 25-year add-on, but it did not. Well, this isn't really about his conviction. No. It's about the sentence. That's correct. And the only constitution tells us to look at the nature and circumstances of the offense as well as the history and character of the offender. We know about the nature of the offense. So what's the 28-year-old defendant, Nathaniel West, why is he all about? Well, he has a prior record, but not a minimum record either. In other words, he had a long juvenile record, been to the Department of Corrections, he had an adult record, and it's not a minimum record. So certainly the court, in looking at the pre-sentence investigation, could have considered all of that and did, correct? Well, with all due respect, Your Honor, I don't think it's that violent a record. He has one conviction for a crime of violence, aggravated battery on school grounds, and he wound up doing a 180-day jail sentence for that. All of his other offenses are property-related, drug-related. He stole a radio, he was doing drugs, and those are what we consider to be non-violent offenses. I urge this court to consider not just the pre-sentence report prepared for purposes of this conviction, but also the series of social investigation reports. Thankfully, Lake County Pre-Sentence Report gives us the full history of the man's prior pre-sentence and juvenile social history reports. Look at those in connection with those juvenile adjudications that the State so vigorously emphasizes in their brief, including a psychological evaluation conducted when Nate was just 7. Young Nate, raised by a single mother, produced test scores which placed him in the low-average range of almost every category, especially reading and writing. We don't have deficit that places people in to not be able to read and write properly. The report offered some good recommendations to perhaps help those deficits, but they were obviously ignored. Fast-forward now to age 12, Nate's first adjudication for stealing a radio out of a car. The probation officer reported that Nate's mother blamed the police, saying she was hesitant about cooperating and following recommendations. So what happens? They offer 23 recommendations that likely went unheeded, and the situation of Nate, Nate Wise, went from bad to worse. But what is there that tells us that a trial court has to give more weight to rehabilitation as opposed to seriousness of the offense? Well, it doesn't have to. It has to give weight to both. As your Honor wrote in, I believe, the Watt case just a couple of weeks ago, an abuse of discretion occurs if the trial court imposes a sentence which is greatly a variance with the spirit and purpose of the law or is manifestly disproportionate to the crime. Well, how was it so here? The spirit of the law requires looking at the history and character of my client as well as the offense. And from the offense, we know my client was there. He may have helped the other guys get into the house by taking an air conditioner out of the house. He may have been armed. He may have been holding the young, not both of the children, but helped two teenagers, whatever, in the room. Did not fire on them. He could have, but he chose not to. He did not. The shots were all done by someone else. He was simply one of the guys along for a ride hoping to make some money. And that's where his background comes in because it shows he wasn't getting the supervision he needed from his mother, from his grandmother, the people who raised him. Now, were his mother and grandmother responsible? Obviously not. No, I mean, I'm glad that you said obviously not because that really wasn't part of the argument. But you have 4.30 in the morning. He can't read and write well. He probably never acquired those skills as he got older because nobody really paid attention to it. His mother didn't. His school didn't, whatever the case may be. But you don't need to read and write to have a gun, probably not registered, and know what 4.30 in the morning is. Most people are sleeping. Know what drugs are and a drug dealer is, and know that you're going to a house that has children. The children are rather significant here, whether he held them at gun bay or whether he was simply there with a gun and children were in that house. They knew a lot about our victim here, these four gentlemen. I mean, they targeted him. They went at night so it would maybe not, you know, they could catch him by surprise. And I think they, isn't it also true that they knew he had a family? But, well, the fact that my client didn't harm the children, didn't push him, didn't knock him with a gun, whatever, didn't shoot him with a gun shows that he has, he's not that violent monster that the state wants him to be. He's not the man who committed the murder here. He engaged with a group of other people to rob a drug dealer hoping to get some money. Wasn't their intention to kill someone with a shot? How many times do we see these kinds of offenses where a robbery-going band winds up in a murder? But we cannot re-weigh the factors that the trial court did. No, but the trial court doesn't give my client any credit for his bad social upbringing. My client was... And what do you, when you say the trial court doesn't give him any credit, what are you saying? What I'm saying is... Because you wanted the trial court to specifically say something about that? I think it would help all of us on appeal if the trial court, well, the trial court gives his statement, gives us all the help and appeal that we're going to get. And by focusing on the offense, by focusing on the victim's family, that doesn't tell us that the judge is considering the history and character of the offender. My client is not a violent person. He was an under-educated, under-trained, under-privileged person who looked on the break-in as being a way to make a quick buck. And certainly the way it went along, he should be punished. He is being punished for it. But 47 years without credit for time served is a long term. And the range was? The range was 35 to 60. So where is that in the range? It's 12 over the minimum. 12 years in prison, Your Honor, is an awful long time in prison. One day in prison is too many. We know that. But if you look at the range, and wasn't the range higher than 60 because of the add-on? Add-on was 75, so 35 to 75. Right. So 20 to 75, and we're looking at 47. So where does that fall? Well, I don't know. It would be more than half over 75. If 75 is the maximum, 47 is more than half. Well, but 35 was the minimum, so 55 would have been the midpoint. Well, again. Right. So it's below, Justice Jorgensen is right, it's below half. You know, in the last argument we talked about how many minutes is it before parole ought to stop. Rule 615B doesn't say so many percents means you can reduce the sentence. If it's not within a certain percentage of the minimum, it's an okay sentence. That's not what the law says. The law says if it's been taken. It has to be within the spirit. Spirit of the law, which includes looking at the defendant's prior past record. And how do we know the trial court didn't do that? Because he didn't say it. The trial court doesn't have to say it. The trial court did say here, did it not, that it took all of the factors in aggravation and mitigation into account, the purposes of the sentencing laws, the Constitution. I mean, wasn't that all? That's a pretty generic. I don't want to mention the Constitution. I think when you say all the factors in mitigation and aggravation, it's a pretty generic statement. Isn't that enough under the case law? Well, under our case here, it's not enough because our man has a bigger history that deserved further review than was given here. When Mr. Wise serves his 47 years without good credit, which he won't get any good credit, he'll be 70 when he's released if he is so fortunate to survive that long in the Department of Corrections. A lesser term would have served the purposes of punishment and rehabilitation, and he therefore asked this court to reduce his sentence to a more reasonable term. What rehabilitation are we looking for here? We know he has, and he got a GED while he was awaiting trial, I think. Yes. So that's a good thing. But what are we looking for and what would his, what would a 35-year sentence, or maybe even a deal if it had been offered and he got out earlier, what rehabilitation are we looking for? Well, again, we're hoping, we're putting some faith in the Department of Corrections, too, to straighten the per se out a little bit. And as we can see from his jail record, that his ability to get the GED, even though with his learning disabilities it was hard to obtain, but he did it. The state insurer will come up and say, well, look at his jail record, he has some violations. He was in that kind of jail for three years. It's not unusual for someone to pull tickets in a jail for being that long. Three tickets in three years, to me, that's an honor student in terms of rehabilitative value. So I think my client here has sufficient rehabilitation that would have made a lesser sentence more appropriate. And we're asking this court to review this case on that basis under 615B4. Thank you. Mr. Lundin. Are you pleased with the court, counsel? Your Honors, the judge here simply did not abuse his discretion. This is not a case where the judge generically said, I considered all the factors in aggravation, mitigation, and left it at that. The judge went on to comment that he considered the arguments of both counsels. He specifically looked at the pre-sentencing investigation. Does he indicate that he had seen the others as well? Because Lake County does compile, or in this particular situation, had compiled a lot of information. The record doesn't disclose that he specifically said he'd seen the others from the prior adjudications. But the judge went on even further. The judge specifically looked at the elocution that respondent made in this case. He noted that he had a handicapped child that he theoretically was providing or not providing for. And the judge specifically took into account the supposed nonviolent past. The judge said, I note and I note the argument that you've basically been a robber up until now. However, the problem is you put yourself in these situations time after time, and this is what it may lead to. The judge commented that he had never seen a case where so many young men put themselves into this situation for, as he said, a bag of dope and a little bit of cash. The judge did consider the rehabilitation potential. He said that specifically. What more can we ask the court to do? The trial judge is not required to list every single instance. He considered everything, and the fact is this individual has little or no rehabilitation potential. And counsel's argument would be because he's never been given the opportunity, a real opportunity. He's been housed. He's been supervised in housing, but he's never had a real world opportunity to rehabilitate himself. So how do we know? How do we know that? Or how do we know that? We'll never know what any individual might or might not do. If we, you know, trading places, Eddie Murphy, we take him off the street, put him in, you know, the perfect situation and then reverse the individual that wasn't the perfect. Will that happen? We'll never know. There's no possible way we can know that. What we do know is that there are thousands, hundreds of thousands, millions of people in poverty and in similar circumstances that don't go on to commit crimes. And we're not dealing with one or two occasions. We're dealing with the fact that this individual, since he was 12, has not gone a year without an arrest and or conviction. This individual was out of jail for less than a month when he got involved in this particular circumstance. And when we talk about violent or nonviolent, there was only one conviction for a violent crime. However, the tickets that he did receive in jail, at least one or two of them, were for threatening other individuals. And let's also look at the fact of his involvement in the crime itself. He wasn't just a lookout according to the people's theory and according to the facts considered in the light most favorable to the people. He was in the children's room, and he wasn't just standing there potentially with a gun. He threatened the children. So when we look at the fact of his involvement, it was a lot stronger than defendants suggest. But the main fact is we have to look at the cases where this court should use its discretion to overturn a trial judge, which is supposedly fairly sparingly, are cases where there's little or no prior criminal history and where there's significant other potential for rehabilitation. The fact that an individual can't read or write, he did get his GED, you know, kudos to him. But there's nothing else in his life that suggests he has rehabilitative potential. We cannot speculate as to were circumstances different. And let's also understand and accept the fact that he was given multiple offers. He chose to roll the dice in his involvement in the crime, which crime after crime in this case ultimately led to a fatality. But he also chose to roll the dice by going to trial. There was a very unusual circumstance in this case, a quote unquote 402 conference mid-trial, where presumably his attorney said, if you're a trial judge, let's give him one last opportunity. And the trial judge said, if you take the offer on the table, I'm inclined to give you 20 to 30 years, depending on the pre-sentencing investigation. The minimum that you're going to get if you're found guilty is 35. I'm not going to sentence you to the minimum. He was sentenced much closer to the minimum, as you said, well under half than the maximum in this case. It's proportionate to the under-individuals. And there's nothing to suggest that this court should do what it isn't really authorized to do. You can reverse the sentence, but not by reweighing the factors. Academia generally says that there are four basic principles of sentencing. First, we think of punishment. Second, we think of rehabilitation, separation, and deterrence. And we're not supposed to weigh one heavier than the other, unless it's called for. Was there some issue of deterrence that the court was concerned about in this case? I mean, again, courts rarely go into specifics. The court here specifically said the two most significant factors to consider, considering all, and it did reference all of them, including rehabilitation or potential for, or I would suggest lack thereof. The court specifically referenced both deterrence and the seriousness of the crime. And the court hit all four of those in this discussion. And, again, there's nothing in the record to suggest the court didn't do exactly what it was supposed to do. We see records where there's much less significant reference to what the judge did consider in reaching the decision. The judge isn't really required to say much of anything. Here, the judge went well beyond that, suggested both deterrence, specifically said, and this judge ruled, said in all four cases, the guilty pleas for the two co-defendants that testified and the other trial, and said this is horrendous circumstance. And it was horrendous because four young people did something. Five, actually, but yeah. For something so minor or because of the circumstance of the family in the house and everybody having guns, what was he, what did, you know, it is hard to figure out in some respects. Was he concerned about what happened with the family or was he concerned that these five young men did something that he considered kind of stupid? It appeared both. It appeared that the judge was basically suggesting, one, I'm concerned that you took an action that led to the reaction that occurred. But the judge also said, strongly implied, it's horrendous that you five did this, which led to the circumstances. I think it's clear from this record than almost any other case that I've seen that the judge did consider those specific circumstances. The judge said it is atrocious. It's awful. I've rarely seen a circumstance where five young men have destroyed their lives as a result of what they did. However, you were there. You were there at the 4, 430 in the morning. You took the action. You had a gun. You went up to the kids' room. You threatened the children. You were not peripherally involved. You blew it. And given the fact of your lengthy history, there's nothing that we can do. We'd ask that this Court would affirm the sentence. Thank you. Mr. Glazer? I don't see any questions. I'll address them in the opening remarks. Thank you very much. And, Counsel, we do appreciate the argument this morning. We will make a decision shortly, and we are going to take a recess to prepare for our last case. Thank you.